**In re OFFICES AND SERVICES OF WHITE PLAINS PLAZA, INC.; the Offices and Services Group, Inc.; Offices and Services of Three Landmark Square, Inc.; Offices and Services of Landmark Square, Inc.; Offices and Services of One State Street, Inc.; Offices and Services of Bridgeport, Inc.; Offices and Services of Atrium, Inc.; Offices and Services of Two Soundview, Inc.; Offices and Services of New Canaan, Inc.; Offices and Services of Summer Street, Inc.; Offices and Services of 60 Arch Street, Inc.; Offices and Services, Inc. (300 Broad Street), Debtors.**

Bankruptcy Nos. 85 B 20127 through 85 B 20138.

United States Bankruptcy Court, S.D. New York.

Jan. 10, 1986.

---

Wofsey, Certilman, Haft, Lebow & Balin (Martin F. Brecker, and Jeffrey Levitan, of counsel), New York City, for debtor.

Zeisler & Zeisler, Bridgeport, Conn. (Richard D. Zeisler, of counsel), for Creditors' Committee.

Charles H. Weintraub, New York City, for Delmonaco Properties.

## DECISION ON MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. § 365(a) AUTHORIZING ASSUMPTION OF LEASE AND FOR EXTENSION OF TIME TO ASSUME LEASE

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Officers And Services of Summer Street, Inc., one of the debtors in this consolidated Chapter 11 case, seeks an order pursuant to 11 U.S.C. § 365(a) authorizing its assumption of a lease for office space located at 999 Summer Street, Stamford, Connecticut, and for an extension of its time to assume the lease for a period of thirty days following the order determining this motion. The issue that must be resolved before the debtor's proposed assumption of the lease can be considered is the extent of the debtor's default under the lease. The debtor contends that its only unpaid rent obligations to the landlord, Delmonaco Properties, cover the period from March 1, 1985 through March 18, 1985. The landlord also regards as unpaid rent the amount that was due for an earlier period and reflected in a promissory note dated February 10, 1985, in the sum of $75,-818.66, which the debtor gave the landlord in consideration for settling a previous rent default. The monthly interest payments called for under the note are also in default. The debtor has offered to cure the payments due under the note in addition to the unpaid rent for the period from March

1 through March 18, 1985. The landlord maintains that the concept of cure includes all of the unpaid rent under the lease, which is inclusive of the amount that was to be paid under the note.

## FINDINGS OF FACT

1. On March 19, 1985, the debtor, Offices And Services of Summer Street, Inc., filed with this court its petition for reorganizational relief under Chapter 11 of the Bankruptcy Code. Similar Chapter 11 petitions were also filed at that time by ten related entities. Each debtor is in the business of leasing office space in commercial buildings and then subleasing furnished office space and providing office services to others who wish to engage in business operations in the leased offices. All of the debtors' estates were jointly administered pursuant to an order entered by this court. Substantive consolidation was approved by the court on December 20, 1985.

2. On September 10, 1981, the debtor, Offices And Services of Summer Street, Inc., entered into a lease with the respondent, Delmonaco Properties ("Delmonaco"), a New York limited partnership, for approximately 5,583 square feet of space in a building owned by Delmonaco and located at 999 Summer Street in the City of Stamford, Connecticut. The lease provides that the rights and obligations under the lease shall be construed in accordance with the laws of the State of Connecticut.

3. The lease provided for a graduated basic rent. For the period from October 1, 1984 to September 30, 1986, the basic rent for the demised premises is $9,305.00 per month. For the period thereafter until the termination of the lease on September 30, 1991, the rent is to be adjusted in accordance with changes in the consumer price index as defined under a formula expressed in the lease.

4. In late 1984, the debtor failed to make monthly rental payments to Delmonaco with the result that the latter commenced an action in the state court to collect the unpaid rents and attached the rentals owing to the debtor from its sub-tenants. The lawsuit was discontinued when the parties entered into a settlement whereby the debtor agreed to pay Delmonaco the sum of $75,818.55 within three years, together with interest at 3% above Citibank's prime rate. The principal sum included unpaid rent, attorneys' fees, penalties and costs, as authorized under the lease.

5. As part of the settlement, the debtor delivered to Delmonaco a promissory note dated February 10, 1985 in the sum of $75,818.65, with interest at 3% above Citibank's prime rate. The note states that it shall be governed and construed in accordance with the laws of the State of Connecticut. The debtor is required to pay the principal sum by February 10, 1988, or sooner if the debtor defaults in the payment of rents due after the date of the note. The debtor is required to pay monthly interest under the note during the period that the principal amount remains unpaid. The provisions for paying interest and principal are as follows:

Interest shall be payable monthly on the unpaid principal balance from time to time remaining, in arrears, with the first payment of interest due and payable on March 10, 1985, and on the 10th day of each month thereafter.

The whole of said indebtedness, both principal and interest, shall be due and payable in full thirty-six (36) months from the date hereof, or in the event the maker, OFFICES AND SERVICES OF SUMMER STREET, INC., shall become in default in the payment of rents payable subsequent to the date of this note under the terms of its lease with DELMONACO PROPERTIES, dated September 10, 1981, together with all costs of collection, including reasonable attorneys fees.

6. The note which the debtor executed and delivered to Delmonaco was jointly and severally guaranteed by the debtor's two principals, Irene M. Ward and Lawrence Mack.

7. When the debtor filed its Chapter 11 petition on March 19, 1985 it was then in default in rent under the lease with Delmonaco for the period from March 1, 1985. In addition, the debtor had defaulted in its monthly interest payments under the note. The amount of unpaid interest due through December 30, 1985 is approximately $9,113.96. Monthly interest accrues at the rate of $736.20 per month. There was no evidence that the debtor made any interest payments to Delmonaco as required under the note.

8. The uncontradicted testimony of the debtor's principal, Lawrence Mack, reflects that the lease is a valuable asset to the debtor and that the consolidated debtors have sufficient cash to cure the default in interest payments under the note. The debtor also proposes to cure the default in rent for the period from March 1, 1985.

9. The debtor is current in its post-petition rent obligation under the lease in question. The debtor's representative testified that it is operating profitably and expects to realize a surplus at the end of 1986 in the amount of $159,000, after the payments it proposes to make under a plan of reorganization. The debtor estimates that its surplus at the end of 1987 will be approximately $245,000. The debtor projects that its surplus at the end of 1988 will be approximately $214,000., after deducting the payment due under the note held by the respondent, Delmonaco.

## DISCUSSION

■ Having defaulted twice, first in the payment of rent under its lease with its landlord, Delmonaco, and second, under its promissory note given to Delmonaco in settlement of its lease default, the debtor now seeks the twin blessings offered under 11 U.S.C. § 365(a) and (b) and under 11 U.S.C. § 1124(2) to assume its lease with Delmonaco and cure its default under the note. A debtor may obtain court approval to assume a lease without having to provide adequate assurance to its landlord if the lease is not in default so that there is nothing to cure. *In re Bon Ton Restau-*

*rant and Pastry Shop, Inc.,* 53 B.R. 789, 793 (Bankr.N.D.Ill.1985); *In re Harry C. Partridge, Jr. & Sons, Inc.,* 43 B.R. 669, 671, 12 B.C.D. 481, 482 (Bankr.S.D.N.Y. 1984); *In re Ridgewood Sacramento, Inc.,* 20 B.R. 443, 445 (Bankr.E.D.Cal.1982). However, if there has been a default in an unexpired lease, the debtor may not assume such lease unless the debtor satisfies the requirements under 11 U.S.C. § 365(b)(1) and:

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

■ The debtor concedes that it has defaulted in the payment of rent under the September 10, 1981 lease with the respondent, Delmonaco, but argues that the default is limited to the period from March 1, 1985 until the filing of its Chapter 11 petition on March 19, 1985. The debtor reasons that its earlier default in paying rent to Delmonaco was settled and discharged when Delmonaco agreed to accept the debtor's promissory note dated February 10, 1985 in the principal sum of $75,818.66, which note was personally guaranteed by two principals of the debtor. The debtor then addresses the default in paying interest under the note with its offer to cure this default in order to reinstate the position it would have been in when it filed its Chapter 11 petition had it been current under both its obligations to Delmonaco. The respondent, Delmonaco, argues that the debtor's original default under its lease was not discharged when Delmonaco accepted the debtor's note for $75,818.66 and that the debtor's failure to honor the note in accordance with its terms reinstates the original rent obligation, with the result that the debtor must cure all of its unpaid rent

if it expects to assume the lease, and not just the rent due for the period from March 1, 1985 until the filing of the Chapter 11 petition.

The debtor's reliance upon Delmonaco's acceptance of the former's promissory note as a discharge of its original rent obligations under its lease lacks persuasiveness in light of the debtor's failure to honor the note by paying monthly interest installments to Delmonaco as required under the note. While the note allows the debtor thirty-six months to make a balloon payment of the principal sum, interest payments on the unpaid principal are required to be made monthly. Additionally, the debtor defaulted "in the payment of rents payable subsequent to the date of this note under the terms of its lease with DELMONACO PROPERTIES, dated September 10, 1981 ..." as expressly required in accordance with the language in the note.

Whether or not the debtor's delivery of its promissory note to Delmonaco constituted a payment and discharge of the original rent obligations must be construed in the light of the governing law in Connecticut because the lease and the note expressly state that Connecticut law should apply with respect to both instruments. As stated in *United States v. Heyward-Robinson Company, Inc.,* 430 F.2d, 1077, 1086 (2d Cir.1970) *cert. denied,* 400 U.S. 1021, 91 S.Ct. 582, 27 L.Ed.2d 632 (1971).

Under the common law of Connecticut, the mere giving of a note does not constitute payment unless it is agreed that the note should be received as payment. Under the law prior to the Uniform Commercial Code the burden was apparently on the defendant maker to establish that the parties intended the note to be payment. *Davidson v. Bridgeport,* 8 Conn. 472 (1831). In fact, acceptance of a note was presumed to be merely conditional payment. *Brabazon v. Seymour,* 42 Conn. 551, 554 (1875).

U.C.C. ¶ 3–802, Conn.Gen.Stat.Ann. § 42a–3–802 (1958) does not appear to have changed the rule on the presumed

intention of the parties except where a bank is the drawer, maker or acceptor.

The applicable Uniform Commercial Code provision enacted in Connecticut provides as follows:

**§ 42a–3–802. Effect of instrument on obligation for which it is given**

(1) Unless otherwise agreed where an instrument is taken for an underlying obligation (a) the obligation is pro tanto discharged if a bank is drawer, maker or acceptor of the instrument and there is no recourse on the instrument against the underlying obligor; and (b) in any other case the obligation is suspended pro tanto until the instrument is due or if it is payable on demand until its presentment. If the instrument is dishonored action may be maintained on either the instrument or the obligation; discharge of the underlying obligor on the instrument also discharges him on the obligation.

This statutory provision must be read in conjunction with Uniform Commercial Code Section 2–511, as adopted in Connecticut, which provides in relevant part as follows:

**§ 42a–2–511. Tender of payment by buyer; payment by check**

\* \* \* \* \* \*

(3) Subject to the provisions of section 42a–3–802 on the effect of an instrument on an obligation, payment by check is conditional and is defeated as between the parties by dishonor of the check on due presentment.

These provisions are consistent with the general principle that when a note or check is given by a debtor to a creditor and accepted by the latter, the presumption is that, as between the original parties, such note or check is no more than a conditional payment which does not discharge the underlying obligation until the note or check is honored. *Bassett v. Merchants Trust Co.,* 118 Conn. 586, 173 A. 777, 93 A.L.R. 1008 (1934). *See Tuckel v. Jurovaty,* 141 Conn. 649, 651–652, 109 A.2d 262 (1954).

The debtor's failure to honor the monthly interest obligation in accordance with the

terms of the February 10, 1985 note precludes the debtor from maintaining that the underlying rent obligation was satisfied and discharged when Delmonaco accepted the debtor's note. The debtor may not have it both ways. The debtor is, in effect, arguing that it should be put into a better position by virtue of two defaults in its obligations than it would have been if there had only been one obligation. By failing to pay the monthly interest installments the debtor is no longer in a position to assert the efficacy of the note as evidence of satisfaction of the underlying rent arrears for which the note was given. Delmonaco need not sue on the note and may elect, as it has, to claim that the debtor's past obligation for rent must be satisfied.

Thus, in order for the debtor to assume the lease in question, it must comply with 11 U.S.C. § 365(b)(1)(A) and cure the entire rent default, or provide adequate assurance that the debtor will promptly cure such default. The original unpaid rent reflected in the February 10, 1985 note, as well as the rent default for the period from March 1, 1985 until the filing of the Chapter 11 petition, constitutes the amount to be cured.

### CONCLUSIONS OF LAW

1. The court has jurisdiction of the parties and the subject matter at issue pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A).

2. The debtor's motion pursuant to Bankruptcy Rule 6006 and 11 U.S.C. § 365(b)(1)(A) to assume its lease with Delmonaco for space located at 999 Summer Street, Stamford, Connecticut, is denied, without prejudice to renewal within thirty days from the date of the order determining this motion, if the debtor, in the future, wishes to comply with the requirements of 11 U.S.C. § 365(b).

3. The debtor's failure to make monthly interest payments to Delmonaco in accordance with the terms of its promissory note dated February 10, 1985, precludes the debtor from asserting that its delivery of such note to Delmonaco discharged its previous default in rent under the lease in question.

4. The debtor's default in the payment of rent to Delmonaco for the period from March 1, 1985 through March 18, 1985, is not the only default under the lease that must be cured. The debtor must also cure or provide adequate assurance of prompt cure with respect to the previous rent default for which the debtor gave Delmonaco its promissory note dated February 10, 1985, if the debtor wishes to assume the lease in question in accordance with the requirements of 11 U.S.C. § 365(b).

5. The debtor's additional motion to extend its time to assume its lease with Delmonaco is granted to the extent that the debtor shall have thirty days following the order determining this motion in which to propose to assume the lease.

SUBMIT ORDER on notice.